UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| PATRICIA MICHELLE FRITTS, Petitioner, | ) | 2:24-CV-00151-DCLC-CRW |
| v. | ) | 2:19-CR-00172-DCLC-CRW |
| UNITED STATES OF AMERICA, Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Patricia Michelle Fritts's *pro se* Motion to Vacate, Set Aside, or Correct under 28 U.S.C. § 2255 [Doc. 1; Criminal Docket Doc. 160]. The United States (the "Government") responded in opposition [Doc. 5] and Fritts has replied [Doc. 6]. For the reasons stated herein, this motion is **DENIED**.

## I. BACKGROUND

From approximately June 2017 through November 2018, Fritts participated in a conspiracy to distribute methamphetamine. [*Plea Agreement*, Criminal Docket Doc. 125, ¶ 4(a)]. On November 2, 2018, following a controlled drug sale with a government informant and an undercover officer, Fritts was arrested. [*Id*. at ¶¶ 4(c)-(d)]. After waiving her *Miranda* rights, she gave a statement to officers describing her history of methamphetamine use and distribution. [*Id*. at ¶ 4(e)]. Her statement included information about two of her co-conspirators, Steven Black and Donald Sellers. [*Id.*]. Fritts also consented to a search of her cell phone, which revealed multiple text messages about drug trafficking. [*Id.* at ¶ 4(f)].

A year later, on October 8, 2019, a federal grand jury returned an indictment against Fritts

and three of her co-conspirators. [Criminal Docket Doc. 3]. Fritts was charged with one count of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A), an offense which carries a statutory mandatory minimum penalty of 10 years in prison. [*Id.*]. Arrest warrants were issued for the four defendants that same day. Two of Fritts's codefendants were quickly arrested, but the warrant for Fritts was never "entered into NCIC as [it] should have," an error that the Government describes as "a fumble." [*Sentencing Transcript*, Criminal Docket Doc. 159 at 5:24-6:1]. As a result of this fumble, nearly four years passed between the grand jury's indictment of Fritts and her arrest, which finally occurred in September 2023. [Criminal Docket Doc. 118].

On November 29, 2023, Fritts pleaded guilty to a lesser-included offense of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C), an offense with no statutory mandatory minimum. [Criminal Docket Doc. 125]. At sentencing, her total offense level was 29 and her criminal history category was II, which together yielded an advisory guideline range of 97 to 121 months. [Criminal Docket Doc. 142, ¶ 60]. The Court granted the Government's motion for a one-level departure due to Fritts's substantial assistance, yielding an advisory guideline range of 87-108 months' imprisonment. Notwithstanding that, the Court varied significantly below that guideline range due to the four-year delay in her arrest and her completion of an inpatient drug treatment program prior to her federal arrest. [Criminal Docket Doc. 157]. Ultimately, the Court sentenced her to 48 months' imprisonment, followed by a three-year term of supervised release. [Criminal Docket Doc. 156]. Fritts did not appeal her sentence, but filed the instant § 2255 motion, seeking to vacate her conviction and sentence.

## II. LEGAL STANDARD

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court ... claiming the

right to be released ... may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). The legal standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994))).

"A prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). To obtain relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the [underlying] proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To obtain relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived the petitioner of "the rudimentary demands of fair procedure." *Reed*, 512 U.S. at 354; *see Grant v. United States*, 72 F.3d 503, 505–06 (6th Cir. 1996).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v.*

*Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. To discharge this burden, a petitioner must allege sufficient facts showing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," he will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

## III. ANALYSIS

Fritts raises multiple grounds for relief, which can be organized into three groups: (1) substantive or procedural collateral attacks on her conviction; (2) sentencing-related claims; and (3) ineffective assistance of counsel claims. The Court will address each group of claims in turn.

### A. Collateral Attacks on Fritts's Conviction

As part of her plea agreement, Fritts waived her right to collaterally attack her conviction or sentence, with two exceptions: she retained the right to file a § 2255 motion as to (1) prosecutorial misconduct or (2) ineffective assistance of counsel. [Criminal Docket Doc. 125, ¶ 11(b)]. Because of this waiver, the Court cannot consider her direct procedural and substantive attacks on her conviction and sentence unless she demonstrates that this waiver "was not knowing and voluntary," *United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017), or that enforcing it would amount to a miscarriage of justice. *Hunter v. United States*, 146 S.Ct. 1702, 1708 (2026) (applying standard to appeal waiver). The record does not show any error of either kind. The Court conducted a full change of plea colloquy and sentenced Fritts well below her advisory guideline range. Fritts does not challenge the knowing and voluntary nature of her waiver. Nor

does she argue that a miscarriage of justice would result from enforcing it.[1] Therefore, her collateral-attack waiver bars the Court from reviewing the merits of any procedural or substantive challenge she intended to press. These claims include "inequitable tolling/non concealment,"[2] Speedy Trial Act and Sixth Amendment violations, Eighth Amendment violations, claims that she was denied the right to counsel, the right of compulsory process, and the right against self-incrimination, and that she was coerced to plead guilty to shotgun pleadings.[3] To the extent that Fritts claims the Government concealed the indictment, the record shows at most administrative negligence in not entering the warrant timely, and negligence is not prosecutorial misconduct.

Moreover, even if Fritts had not waived her right to pursue these claims, they would be

---

1 At one point in her motion, Fritts recites the following: "Fundamentally a miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who could be legally innocent ; actually innocent." [Doc. 1, pg. 4]. She does not follow this statement of law with any argument that she herself is innocent, or that a miscarriage of justice would occur by enforcing her collateral-attack waiver. Even granting Fritts leniency as a *pro se* petitioner, the Court does not see anything in her motion that actually raises a miscarriage of justice argument, and the Court cannot make any argument on her behalf. *See Reeves v. Ratliff,* No. -5CV112-HRW, 2005 WL 1719970, at *2 (E.D. Ky. July 21, 2005) ("Judges are not required to construct a [*pro se*] party's legal arguments for him.").

2 Fritts's argument regarding inequitable tolling and non-concealment is difficult to follow, as nearly all of her argument refers to Eleventh Circuit cases discussing the statute of limitation periods for various civil actions. *See, e.g., Justice v. United States*, 6 F.3d 1474 (11th Cir. 1993) (concerning the limitations period for civil actions brought under the Public Vessels Act and the Suits in Admiralty Act); *Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259 (11th Cir. 2003) (same for § 1983 claims); *Lawrence v. Florida*, 421 F.3d 1221 (11th Cir. 2005), *aff'd*, 549 U.S. 327 (2007) (same for habeas petitions). In doing so, Fritts appears to conflate the statutes of limitation of various civil actions to the Government's criminal prosecution of her case that she alleges violated the Speedy Trial Act and her Sixth Amendment rights. Inequitable tolling and non-concealment are not relevant to her § 2255 motion, which was timely filed. To the extent her argument concerns the timeliness of the Government's prosecution of her case, this is barred as described herein.

3 Fritts appears to make three arguments related to shotgun pleadings: first, that she was coerced to plead guilty to the shotgun pleadings; second, that she only pleaded guilty to a violation of 21 U.S.C. § 846, and not § 841(a)(1) and (b)(1)(C); and third, that her counsel was ineffective for not objecting to the shotgun proceedings. The first two arguments are procedurally foreclosed, and the Court will consider the latter in Part III.C.iv.

procedurally barred as she cannot raise claims for the first time in a § 2255 motion without a showing of cause, prejudice, or actual innocence. *Bousley v. United States,* 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." (citations and quotations omitted)). Fritts could have raised these claims on direct appeal, but she chose not to file an appeal. And she does not assert either cause, prejudice, or actual innocence. As such, her claims are procedurally barred and must be denied.

**B. Sentencing Claims**

Fritt's claims attacking her sentencing fall within her collateral-attack waiver and are barred for the reasons stated in Part III.A. Even if they were not, they fail on the merits. Fritts raises two sentencing related challenges to her sentence that are inapplicable in her case. First, she argues that inchoate crimes cannot be used as a predicate offense for career offender status. But Fritts was not sentenced as a career offender. Moreover, in 2023—before Fritts was sentenced—the Sentencing Commission amended the guidelines to specifically include certain inchoate offenses among career-offender predicate offenses. U.S.S.G. § 4B1.2(d) (2023); *see also* U.S.S.G. App'x C Supp., amend. 822 (Nov. 1, 2023). Second, Fritts argues that Amendment 821 should be applied retroactively to her sentence. But Fritts was sentenced in April 2024, after Amendment 821 had already been incorporated into the Sentencing Guidelines; therefore, she already received the full benefit of the amendment. Because neither of Fritts's sentencing-related arguments is relevant to her sentence, these claims are denied.

**C. Ineffective Assistance of Counsel Claims**

Finally, Fritts raises a series of ineffective assistance of counsel claims, asserting that her

attorney: (1) did not move for a bill of particulars after Fritts asked him to do so; (2) did not bring any motions related to Sixth Amendment or Speedy Trial Act violations; (3) was not prepared for trial or evidentiary hearings; (4) failed to object to shotgun pleadings; and (5) did not provide the correct guideline calculations before her plea hearing, causing Fritts to receive a sentence of 48 months' imprisonment that she was unaware was possible.

When a petitioner contests her sentence by claiming ineffective assistance of counsel, she must satisfy the *Strickland* test: a two-pronged test that requires a showing of deficient performance and resultant prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Specifically, a petitioner must establish that "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 694).

Under the first *Strickland* prong, there must be evidence that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687). The petitioner must establish counsel's constitutionally defective performance by a preponderance of the evidence. *Packett v. United States*, 738 F. App'x 348, 352 (6th Cir. 2018) (quoting *Pough*, 442 F.3d at 964.). As to the second "prejudice" prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Griffin*, 330 F.3d at 736 (quoting *Strickland*, 466 U.S. at 694).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted). Indeed, "[c]ounsel's performance is strongly presumed to be effective." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (quotation omitted); *see Thelen v.*

*United States*, 131 F. App'x 61, 63 (6th Cir. 2005) ("A deferential standard of review applies to ineffective assistance claims. A defendant must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" (quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996))); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (citation omitted)).

The Court will assess each of Fritts's arguments that she received ineffective assistance of counsel to determine whether they satisfy the *Strickland* standard.

**i. Bill of Particulars**

Fritts asserts that she asked her attorney to request a bill of particulars "to determine the specific weights associated with the allegations in this case", and that his failure to do so constituted ineffective assistance of counsel. [Doc. 1, pg. 10].

The purpose of a bill of particulars is "to minimize surprise and assist [the] defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool ... to obtain detailed disclosure of all evidence held by the government before trial." *United States v. Vassar*, 346 F. App'x 17, 21 (6th Cir. 2009) (quoting *United States v. Salisbury,* 983 F.2d 1369, 1375 (6th Cir. 1993)). And "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." *United States v. Kincaid*, No. 3:10-CR-160, 2013 WL 3991796, at *4 (E.D. Tenn. Aug. 2, 2013), *report and recommendation adopted*, No. 3:10-CR-160-1, 2013 WL 5488524 (E.D. Tenn. Oct. 2, 2013) (citation and quotation omitted).

Here, the indictment and discovery materials provided Fritts with sufficient knowledge to raise a defense against her pending charges. The indictment charged Fritts with conspiracy to distribute 50 grams or more of methamphetamine between June 2017 and October 2019.[4] Included in the discovery material provided by the Government was Fritts's statement to officers following her arrest in 2018, wherein she recounted the quantities of methamphetamine she had sold over time. [*See* Criminal Docket Doc. 125, ¶ 4(e) (relating Fritts's statement that starting in 2017, Fritts was selling a half ounce per week, then one ounce per week, then down to 3.5 grams up to one quarter ounce per week, then finally escalated to selling four ounces twice a week.)]. Following her review of the indictment and the discovery material, Fritts was informed of the specific drug quantities at issue in her case. As such, a bill of particulars was not warranted here, and her counsel was not ineffective for failing to request it. *See Bozeman v. Schiebner*, No. 24-1973, 2025 WL 1291960, at *5 (6th Cir. Apr. 2, 2025) ("Counsel is not ineffective for failing to pursue a meritless motion."); *see also Coley v. Bagley,* 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

**ii. Sixth Amendment or Speedy Trial Act Motions**

Fritts argues that her counsel was ineffective as he did not prepare any motion "relative to the violation of [her] Constitutional Right to a Speedy Trial (Sixth Amendment Speedy Trial Act 1974)." [Doc. 1]. Fritts fails to show that there was any violation of the Speedy Trial Act. Under the STA, the seventy-day clock begins to run from indictment or first appearance, "whichever date last occurs." 18 U.S.C. § 3161(c)(1). Fritts first appeared in September 2023, [Doc. 111], so the time between the indictment (October 8, 2019) and arrest did not count against the STA. Thus,

---

[4] The Indictment charges a conspiracy from June 2017 through October 2019. However, Fritts' plea agreement limited Fritts' involvement to November 2018 [Criminal Docket Doc. 125, at ¶ 4(a)].

any motion her counsel would have filed regarding the STA would have necessarily failed. On the Sixth Amendment claim, Fritts claims the delay in arresting her was nearly four years. The Government concedes the negligence. But regardless of any potential Sixth Amendment claim she might have, Fritts fails to allege that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, she fails to show she is entitled to relief on her Sixth Amendment claim.

In any event, Fritts's argument is without merit because she waived her right to have counsel assert this claim when she entered a guilty plea. The Sixth Circuit has repeatedly held that "a voluntary and unconditional guilty plea waives all non-jurisdictional defects in the proceedings." *United States v. Dossie*, 188 F. App'x 339, 345 (6th Cir. 2006) (quoting *United States v. Ormsby,* 252 F.3d 844, 848 (6th Cir. 2001)); *see also United States v. Brown*, 498 F.3d 523, 529 (6th Cir. 2007) ("a defendant whose trial does not begin on time is deemed to have waived the right to move for dismissal of the information or indictment if he or she does not file that motion prior to trial or entry of a guilty plea." (internal citation and quotations omitted)); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("An unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations."). Fritts did not enter a conditional plea preserving her right to litigate a speedy trial violation. As such, once she pleaded guilty, her attorney could not raise either a Sixth Amendment or Speedy Trial Act violation to challenge her indictment. Again, because "[c]ounsel is not ineffective for failing to pursue a meritless motion," *Bozeman*, 2025 WL 1291960, at *5, Fritts's counsel was not ineffective for failing to raise a speedy trial violation.

**iii. Preparation for Evidentiary Hearings and Trial**

Next, Fritts claims that she asked her attorney for an "evidentiary hearing" and "to bring in exculpatory witnesses to testify on her behalf." [Doc. 1, pgs. 5, 10]. She argues that her attorney's failure to subpoena witnesses or otherwise prepare for an evidentiary hearing and trial constituted ineffective assistance of counsel.

There are two issues with these claims. First, Fritts does not point to any specific witnesses who could have been called or evidence which would have proven exculpatory. Conclusory allegations, such as Fritts's, that counsel was unprepared or failed to investigate are insufficient to warrant habeas relief. *White v. Cason*, No. 04-CV-75071, 2006 WL 763194, at *11 (E.D. Mich. Mar. 24, 2006) (citing cases); *see also United States v. Birdsong*, No. CR 5:16-016-DCR, 2019 WL 4696410, at *2 (E.D. Ky. Sept. 26, 2019) ("a defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome." (quotation and citations omitted)). Second, by pleading guilty, Fritts waived her right to a trial. Her attorney had no duty to investigate her case further (aside from any investigations necessary for her sentencing hearing) or prepare for any evidentiary hearings or trial once she signed the plea agreement. Accordingly, Fritts has not shown her counsel was ineffective as to these claims.

**iv. Objection to Shotgun Proceedings**

Next, Fritts asserts that she was subjected to "shotgun proceedings," as she contends that she only agreed to plead guilty to a violation of 21 U.S.C. § 846, but not to violations of 21 U.S.C §§ 841(a)(1) and (b)(1)(C). [Doc. 1, pg. 4]. She argues that her counsel was ineffective for failing to object to these additional "stacked" counts that added to her sentence.

Fritts's contentions are entirely contradicted by the record and by her own sworn statements before the Court at her change of plea hearing. Fritts was charged with one count of conspiracy to

distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). [Criminal Docket Doc. 3]. Her signed plea agreement declared that she pleaded guilty to the lesser included offense of count one, that is, conspiracy to distribute a quantity of methamphetamine, "in violation of 21 U.S.C. §§ 846 *and 841(a)(1), (b)(1)(C)*." [Criminal Docket Doc. 125, pg. 1 (emphasis added)]. At her change of plea hearing, Fritts pleaded guilty to the offense under all three statutes and stated to the Court—under oath—that her plea was knowing and voluntary. She also stated that no one had attempted to coerce her to plead guilty by making any promise or assurance that was not present in the plea agreement. These "[s]olemn declarations in open court carry a strong presumption of verity," and "constitute a formidable barrier in any subsequent collateral proceeding." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see Marks v. Davis*, 504 F. App'x 383, 386 (6th Cir. 2012) (stating that "the plea transcript itself carries great weight" (citing *id.*)); *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure [during a plea colloquy], 'the defendant is bound by his statements in response to that court's inquiry.'" (quotation omitted)). By attempting to double back on sworn statements that she made in open court, Fritts cannot succeed on a claim of ineffective assistance of counsel. *See United States v. Vargas-Gutierrez*, 464 F. App'x 492, 496 (6th Cir. 2012) ("A motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." (quoting *United States v. Shah*, 453 F.3d 520, 523 (D.C. Cir. 2006))).

Fritts's sworn statements at her sentencing hearing also contradict her current claims. Prior to the sentencing hearing, Fritts's Presentence Investigation Report ("PSR") was prepared. The PSR stated that her offense was "Conspiracy to Distribute a Quantity of Methamphetamine (Actual) 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1)(C)." [Criminal Docket

Doc. 142, pg. 1]. In fact, her PSR repeatedly stated that her offense conduct violated all three statutes. [*See id.* at ¶¶ 2, 59]. At her sentencing hearing, Fritts stated under oath that she had an opportunity to review the PSR with her attorney and that he raised all objections to it that she wanted raised. [Criminal Docket Doc. 159 at 3:1-10]. Fritts could have, but did not, file any objections to her PSR. [*Id.* at 3:12-13]. Accordingly, there was no basis for Fritts's counsel to object to "stacked" or "shotgun" charges, and he was not ineffective for not doing so.

**v. Guidelines Calculation Prior to Plea Agreement**

Lastly, Fritts argues that her counsel "should have gotten the correct calculation of the U.S.S.G prior to entry of the plea proffer agreement and sentencing. Petitioner did not expect a sentence of 48 months incarceration." [Doc. 1, pg. 10]. Fritts does not provide the guideline-range calculation her attorney provided prior to the entry of her guilty plea.

While it is true that "[c]ompetent representation [] demands that counsel explore the range of penalties a defendant is facing under likely guidelines calculation scenarios as completely as possible," *Thompson v. United States*, 728 F. App'x 527, 533 (6th Cir. 2018), it is also "well-established that 'an inaccurate guideline-range prediction by an attorney will generally not meet the requirement of deficient performance under *Strickland.*'" *Morris v. United States*, No. 1:12-CR-91-1-HSM-WBC, 2017 WL 1088289, at *7 (E.D. Tenn. Mar. 21, 2017) (quoting *United States v. Elliott*, No. 6:06-CR-101-DCR-1, 2011 WL 1793385, at *10 (E.D. Ky. Mar. 16, 2011)). Even if counsel had provided Fritts with an inaccurate sentencing guideline range, the Court conducted a proper plea colloquy and advised Fritts of the statutorily authorized penalties during the plea hearing. The Sixth Circuit has held that "a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea." *United States v. Pola*, 703 F.App'x 414, 423 (6th Cir. 2017) (citing *Ewing v. United States*, 651 F. App'x 405,

410 (6th Cir. 2016)); *see Elliott*, 2011 WL 1793385, at *10 ("In sum, an attorney's inaccurate attempt at predicting a movant's Guideline range does not constitute ineffective assistance of counsel, especially where the court fully explains the consequences of pleading guilty.").

Moreover, Fritts' claim is difficult to reconcile with her own sworn statements at sentencing where she confirmed that she wanted the Court to impose a 60 month term of imprisonment, just as her counsel had been advocating. [Criminal Docket Doc. 159 at 35:8-13 (affirming that she understood her attorney was asking for a 60-month, below the guidelines sentence, and that she wanted to receive a 60-month sentence)]. The Court imposed an even lower sentence of 48 months. She can hardly argue that counsel's performance caused her to receive a sentence she did not anticipate. She received a sentence twelve months below the sentence to which she was wanting the Court to sentence her. She cannot show prejudice regarding the sentence she received.

In sum, Fritts has not established that her counsel was constitutionally defective for providing an incorrect guidelines calculation prior to her entry of a guilty plea.

## IV. CONCLUSION

Because the record shows that Fritts is not entitled to any relief, no evidentiary hearing is required. 28 U.S.C. § 2255(b). For these reasons stated herein, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1; Criminal Docket Doc. 160] is **DENIED**. The Government's Motion for Extension of Time to Respond [Doc. 4] is **GRANTED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v.*

*Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. Here, Fritts has failed to make a substantial showing of the denial of a constitutional right, as reasonable jurists would not debate the Court's findings as to any of Petitioner's claims that were addressed on their merits. Therefore, a certificate of appealability will be denied.

A separate judgment shall enter.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Court